18382

**S. C. RUSH, Respondent, v. CITY OF GREENVILLE and Members of Greenville City Council, Appellants**

(143 S. E. (2d) 527)

*W. H. Arnold, Esq.,* of Greenville, *for Appellants,*

*Messrs. Abrams, Bowen & Townes,* of Greenville, *for Respondent,*

July 20, 1965.

Moss, Justice.

S. C. Rush, the respondent herein, on August 1, 1962, purchased from W. R. Lupo a lot of land in the City of Greenville, lying between Augusta Road and the Old Augusta Road. In the deed of conveyance the property is described according to a plat thereof made in June, 1962. The frontage of this lot on Augusta Road is 103.8 feet. The side lines of the main portion of this lot, which are approximately parallel, extend back from Augusta Road in a westerly direction for a distance of approximately 195 feet on the northern side thereof and 210 feet on the southern side. There is a small strip of land referred to in the record as an appendix or "tail" which extends from the main portion of the said lot to Old Augusta Road, having a frontage thereon of 22.7 feet. This strip is approximately 102 feet

in length and the northern line thereof is an extension of the northern boundary line of the main lot.

When the respondent purchased the aforesaid property, the portion fronting on Augusta Road was zoned "E-Local Commercial" to a depth of approximately 145 feet along the northern boundary thereof and 160 feet along the southern boundary. A commercial or business establishment could be constructed upon this portion of the lot. A strip across the back of the main lot about 50 feet in depth and 100 feet in width, together with the appendix or "tail", a strip 22.7 feet by 102 feet was zoned "A-1 Single Family Residential".

It appears that the respondent petitioned the Planning and Zoning Commission and the City Council of Greenville to change so much of the aforesaid lot as was zoned "A-1 Single Family Residential" to "E-Local Commercial". This request was granted as to the strip across the back of the main lot about 50 feet in depth and 100 feet in width, but was denied as to that portion of the property which fronts on Old Augusta Road, which has heretofore been described as the appendix or "tail". The reason for the action of the City Council was as follows:

"(1) That the use of the property on Augusta Road for commercial purposes is consistent with the character of that area and the suggested increase in depth will not affect the residential area to the west.

"(2) That the extension of a commercial district along Old Augusta Road is undesirable and that to permit this strip to become an entry to the proposed business development would be detrimental to the residential neighborhood of Old Augusta Road."

The respondent instituted this action on July 9, 1963, and by his complaint alleged that he was the owner of the lot of land hereinbefore described and that he had made a proper request to the Planning and Zoning Commission and the City Council of Greenville to rezone the

said property so that the entire lot could be used by him for commercial purposes. He alleges that on June 13, 1963, his lot was zoned "E-Local Commercial" as requested but the portion fronting on Old Augusta Road 22.7 feet in width and having a depth of 102 feet was retained in the "A-1 Single Family Residential" zone. He asserts that this action was arbitrary, unreasonable and in violation of the due process clauses of both the State and Federal Constitutions in that he has been denied the full right and enjoyment of his property to which he is entitled and that the aforesaid action amounted to a taking of his property without just compensation and without due process of law. He asks that the zoning ordinance, as it applied to the real estate owned by him fronting on Old Augusta Road, be declared null and void and that the court issue an order directing the City of Greenville to zone the small strip of land herein described as an "E-Local Commercial" lot.

The City of Greenville, in its answer, admitted that the respondent was the owner of the property described in the complaint and alleged that he bought the small frontage of some 22.7 feet on Old Augusta Road knowing that it could not be used by him for either residential or business purposes. The other allegations of the complaint were denied.

Subsequent to the filing of the complaint and the answer in this case the respondent petitioned the Planning and Zoning Commission and the City Council of Greenville for a special permit to use the frontage of 22.7 feet on Old Augusta Road to a depth of some 102 feet in connection with the commercial purposes which he desired to adopt for his property fronting on Augusta Road and which had been zoned "E-Local Commercial". This request was denied and the reasons therefor are as follows:

"(1) The development of this strip of land, specifically 22.7 feet by 102 feet fronting on Old Augusta Road, for a parking area and driveway to a customer parking lot constitutes a further encroachment of business into a resi-

dential neighborhood and would be detrimental to the residences of the area.

"(2) The development of this strip as a driveway entrance and exit would be detrimental to the traffic safety of Old Augusta Road.

"(3) The development of the proposed driveway would increase the traffic volume and movement at this location, and would, thereby, constitute a hazard to the many children who travel this street to and from Blythe Elementary School and Hughes Junior High School."

This second application of the respondent was not referred to in the pleadings in this case but evidence thereabout was introduced without objection and such was considered in the determination of this cause. Even though no issue was made in the pleadings concerning this application, consideration will be given to such in the disposition of this appeal.

This case was tried before the Honorable Frank Eppes, Resident Judge of the Thirteenth Circuit. The testimony was taken and a number of exhibits were offered in evidence. Thereafter, on May 6, 1964, the Trial Judge, by his order, held that the respondent was entitled to the relief sought and that the action of the City Council and the Planning and Zoning Commission, in refusing such, was arbitrary, unreasonable and in violation of the due process clauses of both the State and Federal Constitutions, and that the respondent had been deprived of the use of his property without just compensation. The Trial Judge ordered the lot fronting on Old Augusta Road to be zoned "E-Local Commercial" and required the city to amend its ordinances accordingly. It is from this order that the City of Greenville prosecutes this appeal.

The respondent testified that he proposed to erect a commercial building upon the lot fronting on Augusta Road and such would have a width of 103.8 feet, running from property line to property line. The building would be set

back 70 feet from Augusta Road and would have an approximate depth of 70 feet which would permit two row parking in the front and rear thereof. The respondent stated that it was his purpose to use the small strip of land which fronts on Old Augusta Road as an access way into the back parking area, it being necessary to have such because entrance could not be made thereto, from Augusta Road. The respondent said that this small strip of land could not be used for residential purposes because it was not large enough square footage wise. The respondent testified that when he purchased the property in question the title thereto was examined by his attorney but he was not informed then as to what the zoning was on the lot. However, he did admit that he knew the front part was zoned "E-Local Commercial" and was so told by the seller and, on cross-examination, he said he knew that under the zoning ordinance the property on Old Augusta Road in the rear of his Augusta Road property was residential. It was suggested to the respondent that his commercial building fronting on Augusta Road could be made deeper and not as wide and leave a twelve foot driveway either on the southern or northern side of the lot, thereby permitting entrance from Augusta Road for the purpose of parking in the rear thereof. He did not approve of this suggestion and answered that people who wanted to occupy a building such as his wanted frontage rather than depth.

The respondent called as a witness an experienced real estate dealer. This witness testified that the value of real estate is based largely on the use that could be made of it. He said that the value of the respondent's commercial property would be substantially depreciated if he could not use the small strip or "tail" as an entrance to the rear thereof. On cross-examination he admitted that if the respondent intended to put a business on the property and wanted to use this small strip of land as an entrance to the rear thereof, he should have found out what the zoning was and the possibility of changing such.

The Assistant Director of the Planning and Zoning Commission of the City of Greenville testified as to the applications made by the respondent for rezoning of or for the commercial use of the strip of land fronting on Old Augusta Road and that such applications were denied for the reason "to permit this parking lot to develop on this property would be a commercial encroachment into a substantial residential area along Old Augusta Road; and also that this parkling lot would affect the traffic on Old Augusta Road, in that it would create a dangerous situation, because of the school children traveling this road, going to Blythe School and Hughes Junior High School in the area."

The parties have stipulated that on May 7, 1964, the next day after the circuit order was filed in this case, the respondent and one Ernest E. Robinson applied to the City of Greenville to, permit the property here involved to be used as a "quick service-carry out restaurant" and showed that the building proposed to be erected thereon would be only 25 feet in width and 42 feet in length. The appellants, in view of this development, petitioned the Trial Judge to rescind and nullify his order of May 6, 1964, on the ground that the same had been improvidently granted and that all proceedings be stayed until the appellants could be heard upon said petition. A rule to show cause was issued by the Trial Judge and all proceedings were stayed until May 20, 1964. Thereafter, the respondent withdrew his application for a permit to use the premises for a "quick service-carry out restaurant".

This appeal presents the question of whether the action of the City Council of Greenville, in refusing to rezone the 22.7 foot strip fronting on Old Augusta Road from "A-1 Single Family Residential" to "E-Local Commercial" was arbitrary, unreasonable and in violation of the process clauses of both the State and Federal Constitutions, and thereby amounted to the taking of respondent's property without just compensation. There are other incidental questions which will be considered.

The zoning ordinance of the City of Greenville was adopted pursuant to the statutory authority contained in Sections 47-1001, *et seq.*, 1962 Code of Laws, and these sections of the Code authorize the zoning of property within a municipality for the purpose of promoting health, safety, morals and the welfare of the community.

The authority of a municipality to enact zoning ordinances, restricting the use of privately owned property is founded in the police power. The governing bodies of municipalities clothed with authority to determine residential and industrial districts are better qualified by their knowledge of the situation to act upon such matters than are the Courts, and they will not be interfered with in the exercise of their police power to accomplish desired end unless there is plain violation of the constitutional rights of citizens. There is a strong presumption in favor of the validity of municipal zoning ordinances, and in favor of the validity of their application, and where the Planning and Zoning Commission and the city council of a municipality have acted after considering all of the facts, the Court should not disturb the finding unless such action is arbitrary, unreasonable, or in obvious abuse of its discretion, or unless it has acted illegally and in excess of its lawfully delegated authority. Likewise, the power to declare an ordinance invalid because it is so unreasonable as to impair or destroy constitutional rights is one which will be exercised carefully and cautiously, as it is not the function of the Court to pass upon the wisdom or expediency of municipal ordinances or regulations. The burden of proving the invalidity of a zoning ordinance is on the party attacking it to establish that the acts of the city council were arbitary, unreasonable and unjust. *Bob Jones University v. City of Greenville,* 243 S. C. 351, 133 S. E. (2d) 843.

There was offered in evidence a plat showing the general area here involved, including the streets to which reference has herein been made, and showing how the lots abut thereon. Reference is here had to the case of *James v. City of*

*Greenville,* 227 S. C. 565, 88 S. E. (2d) 661, wherein there appears a diagram or sketch of such area. Lot No. 2 on this diagram is what was the Lupo lot when the respondent purchased a part of the same. This Lot No. 2 and the other lots south thereof and fronting on Old Augusta Road were zoned "A-1 Single Family Residential". It is admitted that the Lupo lot was thereafter subdivided into three distinct parcels. Lot No. 2.1 thereof is the property purchased by the respondent from Lupo and such had a frontage on Old Augusta Road of 22.7 feet. Lupo retained what is known as Lots Nos. 2 and 2.2 which now have a frontage on Old Augusta Road of 74.3 feet, and prior to the subdivision thereof Lupo owned a frontage of 97 feet on the said Old Augusta Road. Thus, it appears that prior to the subdivision and sale by Lupo to the respondent that the property owned by him on Old Augusta Road met the minimum requirements of the zoning ordinance that a residence lot should have an average width of not less than 60 feet and an area of not less than 9,000 square feet. It was the deliberate and arbitrary acts of Lupo and the respondent in subdividing the property that destroyed its adaptability to residential purposes. There were no acts on the part of the City Council of Greenville and the Planning and Zoning Commission that brought about this situation.

The Trial Judge found that the property, described as Lot No. 1 on the diagram shown in the *James case,* is zoned in its entirety as "E-Local Commercial" and is being used by an automobile washing firm. He also found that the nearby property on Augusta Road is to a great extent being used commercially at this time and has been zoned for such usage. The rear of the lots other than the aforesaid corner lot and those fronting on Augusta Road are still zoned residential. The lots lying on the western side of Old Augusta Road are also zoned residential. Lot No. 1, as such appears on the diagram in the *James case,* was being used for commercial purposes prior to this area being annexed to the City of Greenville. After the annexation, the City Council

of Greenville zoned the James lot "A-1 Single Family Residential" and notified the owner that the commercial use of the property would have to be discontinued. This Court held that the use which James was making of his property at the time of the passage of the zoning ordinance became the authoritative standard for determining the use which he could continue to make of his property after the passage of the zoning ordinance. It was further held that the City of Greenville zoning ordinance requiring discontinuance of nonconforming uses was unconstitutional in its application to James whose land before incorporation into the city had been used commercially and after incorporation was zoned residential. This is the reason that the James lot is still zoned as commercial property and can be used as such.

The respondent here knew, or should have known, when he purchased the lot of land fronting on Old Augusta Road, that such was restricted to residential use under the existing zoning ordinance of the City of Greenville. He likewise knew, or should have known, at the time of such purchase, that a lot zoned for residential purposes could not be subdivided so as to destroy its use for residential purposes and, thereafter, use such portion so purchased for commercial purposes in violation of the zoning ordinance. He now asserts that the refusal of the City of Greenville to rezone said lot or to grant him permission to use same as an access way into the back parking area located on this commercial property imposes upon him an unnecessary hardship. Ordinarily, a claim of unnecessary hardship cannot be based upon conditions created by the owner nor can one who purchases property after the enactment of a zoning regulation complain that a nonconforming use would work an unnecessary hardship upon him. A self-created or self-inflicted hardship intentionally created by an owner of premises for the purpose of laying a basis for an application for a variance cannot be considered for such purpose. 58 Am. Jur., Zoning, Sections 208, 209, pages 1053 and 1054. Where one purchases realty with intention to apply for variance, he cannot

contend that restrictions caused him such peculiar hardship that entitles him to special privileges which he seeks. *Gleason v. Keswick Imp. Ass'n,* 197 Md. 46, 78 A. (2d) 164.

It has been held that where land lies partly in zone in which commercial buildings may be erected and partly in contiguous zone in which such buildings are prohibited there is not a sufficient reason for a variance. *Kindergan v. Board of Adjustment of Borough of River Edge,* 137 N. J. L. 296, 59 A. (2d) 857. In the case of *Leimann v. Board of Adjustment, etc.,* 9 N. J. 336, 88 A. (2d) 337, it was held that the difficulty of access to rear of tract of realty was not a sufficient basis upon which to grant a variance. It has been generally held that private lands within an area zoned for residential purposes cannot be used as a regular means of vehicular passage to and from commercial or business premises without being a violation of the zoning laws. In *Brookline v. Co-Ray Realty Co.,* 326 Mass. 206, 93 N. E. (2d) 581, where the defendant company owning land in Boston, located in a general residence district and also contiguous land in Brookline which was within the classification, "single residence district", proposed to construct an apartment building on the Boston area, it was held that the defendant should be enjoined from using any part of the Brookline land as a rear yard and service entrance for the proposed apartment house since such use would be in violation of the Brookline zoning law. In the case of *San Francisco, City and County of, v. Safeway Stores,* 150 Cal. App. (2d) 327, 310 P. (2d) 68, 63 A. L. R. (2d) 1441, it was held that the use of a lot in a residential zone for ingress to and egress from an adjoining public garage in a business zone was a violation of the residential zoning ordinance. To the same effect are the cases of *Yonkers v. Rentways, Inc.,* 304 N. Y. 499, 109 N. E. (2d) 597; *Great Neck Estates v. Bemak & Lehman,* 248 N. Y. 651, 162 N. E. 562.

The Trial Judge held that by zoning the property in question so that the rear thereof cannot be used as a driveway or entrance, the use of the portion zoned for commercial pur-

poses has been greatly restricted, thus causing the commercial property to be greatly reduced in value. It should be remembered that at the time the respondent purchased the lot fronting on Old Augusta Road such was restricted to residential use and there has been no change in the zoning regulations since said purchase.

The case of *Simmons v. Board of Adjustment of City of Charleston,* 226 S. C. 459, 85 S. E. (2d) 708, was one in which the Charleston Lobster House made application for a permit to erect a public restaurant upon a leased site in a residential district. Such was denied by the zoning administrative officer of the City of Charleston because the zoning ordinance prohibited the erection of a restaurant in such district. The applicant appealed to the Board of Adjustment and, following a hearing, such board authorized the construction of the restaurant by granting a variance to the zoning ordinance. A petition for a writ of certiorari was filed by a number of residents of the area and the cause thereafter was referred to a special referee, who, following a duly convened reference, at which the testimony was taken, filed his report recommending that the variance sought, which had been approved by the Board of Adjustment, be granted. The Circuit Court affirmed the said report. An appeal to this Court followed. It was the position of the respondents that they would suffer loss in income or profit attributable to their inability to construct and operate the proposed restaurant if a permit to do so was denied. This Court, in reversing the action of the Board of Adjustment and the lower Court, said:

"* * * But, going further and assuming that they will suffer substantially in a financial way, and this is obviously the only hardship that could possibly be expected to result to them, that alone is not sufficient. 'Although it is an element in the situation which is entitled to fair and careful consideration, mere disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions ordinarily does not

warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship.' 62 C. J. S., Municipal Corporations, § 227 (11), p. 536. And in the case of *Lee v. Board of Adjustment,* 226 N. C. 107, 37 S. E. (2d) 128, 131, 168 A. L. R. 1, it is said that 'The financial situation or pecuniary hardship of a single owner affords no adequate grounds for putting forth this extraordinary power affecting other property owners as well as the public.' "

. In the *Simmons case* it was conceded that the State Ports Authority, which had leased the property to the Charleston Lobster House, would suffer pecuniary loss if the variance sought was denied. It was also conceded that this particular property could not be used for residential purposes. It was said by this Court in disposing of this issue, that:

"The Authority purchased this area after the zoning ordinance was in effect, and it must be assumed that any hardship, financial or otherwise, resulting from existing conditions were contemplated at the time of the purchase, and the owner should not now be relieved therefrom to the impairment of rights of others who also purchased in reliance on the ordinance and have made large expenditures of capital on the strength of the assurances therein."

The Trial Judge found that the use of the property fronting on Old Augusta Road would not adversely affect or depreciate any other property in the area or create problems to the residents thereof nor to the City of Greenville. In determining whether to grant the variation of the application of a zoning restriction to a particular piece of property, it is proper to take into consideration the effect of granting such variation on the public generally. A review of the record reveals no evidentiary support for the finding of the Trial Judge. The uncontradicted testimony is that to grant the request of the respondent would permit a commercial encroachment into a residential area and would affect traffic on Old Augusta Road by creating a dangerous situation because of the school children traveling

this road going to and from Blythe School and Hughes Junior High School.

We have held that the extent of the business area in ▮ a municipality and its location are matters which cannot be controlled and determined by judicial decision. The regulation of such is normally reserved under the police power to the legislative branches of the local government. The Court has no power to zone property. *Strong v. Winn-Dixie Stores, Inc.,* 240 S. C. 244, 125 S. E. (2d) 628.

It is our conclusion that the respondent has failed to ▮ establish that the acts of the City Council of Greenville, in refusing to rezone the property in question or to grant a variance, were arbitrary, unreasonable and unjust. There is no evidence in the record that the action of the City Council of Greenville in any way violated any rule, regulation or ordinance in reaching their decision in this case. There has been no violation of any constitutional rights of the respondent on the grounds asserted by him.

The judgment of the lower Court is reversed and the cause remanded for entry of judgment in favor of the appellants.

Reversed and remanded.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.